UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| LEXINGTON SURGICAL ) <br> SPECIALISTS, P.S.C., ) <br> ) <br>     **Plaintiff,** ) <br> ) <br> v. ) <br>     ) <br> **KELI M. TURNER, M.D.,** ) <br> ) <br>     **Defendant.** ) <br> ) <br> ) | NO. 5:21-CV-00007-MAS |

**MEMORANDUM OPINION & ORDER**

After previously granting summary judgment in this matter to Plaintiff Lexington Surgical Specialists, P.S.C. ("LSS"), the Court ordered LSS to supplement its calculation of damages for entry of judgment. [DE 84]. LSS did so [DE 85, 86, 87] and Defendant Keli M. Turner, M.D. provided her response [DE 88, 89, 91]. Considering the holdings set forth in its prior Memoranda Opinion & Order [DE 72, 84], the Court makes the below findings as to LSS's damages.

### I.  RELEVANT CONTRACTUAL PROVISIONS

The Court has frequently detailed the allegations that have led to this point. [DE 72, 79, 84]. With only the damages owed to LSS to address, the Court exclusively focuses on the relevant contractual language and its application to the specific damage calculations.

The contracts governing the relationship between Dr. Turner and LSS were an Employment Agreement and a Recruitment Agreement. The Employment Agreement set forth that Dr. Turner's salary of $600,000 for a period of two years and personal benefits associated with that relationship.

The Recruitment Agreement, signed by Dr. Turner, LSS, and Baptist Health Lexington ("Baptist"), governed the financial support for Dr. Turner's salary. In short, Baptist advanced LSS $25,000 each month to pay Dr. Turner for her work. During that same month, Dr. Turner would both collect fees for her work and incur expenses. The Recruitment Agreement gave specific definitions of Collected Fees and Incremental Expenses. At the end of each month, Dr. Turner, LSS, and Baptist would calculate the difference between Collected Fees and Incremental Expenses and determine if that amount was greater or less than the advanced $25,000. "If the Collected Fees in any month, less Incremental Expenses incurred during the same month [ ], are less than the guarantee monthly amount of Twenty-Five Thousand Dollars ($25,000.00), then [Baptist] will loan [LSS] the difference[.]" [DE 60, Page ID# 1107]. "If the Collected Fees in any month, less Incremental Expenses incurred during the same month [] exceed Twenty-Five Thousand Dollars ($25,000.00), and if [Baptist] has theretofore loaned to [LSS] monies pursuant to this Agreement, [LSS] shall repay to [Baptist] the amount by which the Collected Fees, less Incremental Expenses for such month, exceeds Twenty-Five Thousand Dollars[.]" [DE 60, Page ID# 1107].

2

Over the course of her two years working for LSS, Dr. Turner was paid $600,000. However, her Collected Fees less Incremental Expenses left a shortfall of $371,738.29. The Employment Agreement stated that any owed money from LSS to Baptist under the Recruitment Agreement was the sole responsibility of Dr. Turner.

> It is [LSS's] express intent that [Dr. Turner] be solely responsible for any repayments to [Baptist] under the Recruitment Agreement. It is [LSS's] express intent that [Dr. Turner] be solely responsible for any repayments to [Baptist] under the Recruitment Agreement. In the event that [LSS] pays any amount to [Baptist] as described above, [Dr. Turner] shall indemnify and hold harmless [LSS] for the full amount of all such payments and the amount of all costs and expenses of recovering such amounts from [Dr. Turner] (including, but not limited to, reasonable attorney's fees).

[DE 60, Page ID# 1105-6].

## II. ANALYSIS

The Court has already granted summary judgment to LSS on its breach of contract claims. The operative issue to address here is how much are the damages for its claims. As set forth above, the initial calculated shortfall was $371,738.29. However, even per LSS, that calculation is not the end of the analysis. The Court must determine any additional issues surrounding Collected Fees and Incremental Expenses that might alter that calculation. Then the Court must address any pre- and post-judgment interest as well as claims for attorneys' fees.

A.  **CONTRACTUAL DAMAGES**[1]

   1. **Collected Fees**

The Recruitment Agreement defines Collected Fees as follows:

> "Collected Fees" is defined as all professional cash receipts, from whatever source, derived by or on behalf of Physician (or by persons otherwise billing under Physician's name or provider number) and actually received, directly or indirectly, by the Practice or by Physician, less cash refund.  Collected Fees shall include (but not limited to) professional revenues received on account of services rendered by Physician, Physician's professional practice, including all patient care revenues, ancillary revenues payable to Physician, the Practice or an assignee thereof, such as revenues from diagnostic tests and injections and other compensation payments generated by or allocable to Physician because of Physician's rendering of professional services or status as a licensed physician.  Collected Fees shall not include consultant and expert witness fees, and honoraria fees received by Physician to the extent those consultant, expert witness or honoraria fees are earned outside of Physician's scope of employment with Practice.

[DE 1-1, Page ID# 14 (emphasis added)].  As the Court noted previously, the definition of Collected Fees is quite broad and inclusive.

One of the prior disputes the Court resolved was whether on-call fees paid by Baptist to LSS were included in Dr. Turner's Collected Fees.  [DE 84, Page ID# 2698-2701].  The Court concluded that on-call fees were included in Collected Fees and asked LSS to determine that amount.  Per its review, LSS calculated Dr. Turner's

---

[1] Throughout Dr. Turner's Response, many of her arguments sound in breach of contract claims.  For example, she claims "LSS violated the 'Collected Fees' term of the Recruitment Agreement"; that "LSS did not provide these financial documents to Dr. Turner on a monthly basis [which was] another violation of the Employment Agreement"; "the absence of a finalized Incremental Expense Report is yet another example of LSS' breach of Section 14 of the Employment Agreement."  [DE 88 at Page ID 2770-72].  It is incumbent on the Court to note, however, that Dr. Turner did not bring a breach of contract counterclaim or affirmative defense against LSS.

prorated on-call fees were $117,500. Dr. Turner complains that LSS hid this information for her previously, but she does not contest the actual calculation.

As LSS fully agrees, the Recruitment Agreement also provides for a ninety-day runout period ("Runout Period"). In support of this calculation, LSS has filed two affidavits from Hillary Fugate ("Fugate"), LSS's Office Manager, in support of its calculations that Dr. Turner generated $23,252.55 during the Runout Period. [DE 60-1 and 87-1]. Fugate's affidavits detail productivity reports and collection reports during the Runout Period totaling $23,252.55. Dr. Turner makes various complaints about the Runout Period calculations, including that "LSS failed to provide Dr. Turner any financial information as to the collections generated during the Run Out Period in violation of Section 14 of the Employment Agreement"; that LSS overpaid Baptist under the terms of the terms of the Agreements; and that "LSS failed to provide monthly Run Out Period collection data" which now forces Dr. Turner to "extrapolate" the amounts she believes LSS should have collected during the Runout Period. [DE 88 at Page ID# 2775-76].

Although the Court agrees with Dr. Turner that LSS's calculations are confusing at best, LSS has brought forth proof of its damages in the form of two affidavits and other documentation that must be countered with more than speculation. Essentially, Dr. Turner questions whether LSS could have collected more fees during the Runout Period, but her comments are nothing more than conjecture. Dr. Turner provides "extrapolated" numbers, which, to the Court's understanding, are figures that are based on Productivity Analysis from October 2019

5

that LSS collected upon (save the first five days in October, i.e., the numbers represent preceding months). Dr. Turner seems to be arguing that LSS should have collected approximately the same amount in October as in December, despite the commonsense conclusion that because Dr. Turner worked only five days in October, and zero days in November, there were little to no new fees to be collected in December. Thus, the only fees to be collected were for her work that predated October 5, 2019; her collected fees would not continue at the same level in perpetuity as she seem to suggest. The fees would have a precipitous and expected drop off as they were paid in the immediate months following the months in which they were incurred (here, it would appear the fees were largely collected in October and November for fees likely accrued in the months just prior—probably September, August, or July). Dr. Turner may have her doubts or wish LSS had collected additional fees, but she does offer a dispute of fact to contest these calculations. Her competing calculations are merely conjecture, and without more, conjecture that belie common sense on the facts here.

Thus, Dr. Turner's indebtedness must be reduced by $117,500 for the call fees and $23,252.55 for the Runout Period. Per LSS, such deductions reduce the debt to $230,985.74. [DE 85, Page ID 2710].

**2.     Incremental Expenses**

The Recruitment Agreement defines Incremental Expenses as follows:

> "Incremental Expenses" is defined as reasonable and actual additional incremental operating expenses attributable to Physician joining the Practice. Projected Incremental Expenses are stated in Exhibit A, attached hereto and incorporated herein by reference.

6

[DE 1-1, Page ID# 14]. Exhibit A to the Recruitment provides a long list of expenses included in that definition of Incremental Expenses. Per LSS, Dr. Turner had $231,774.05 in Incremental Expenses during the life of the Recruitment Agreement.

Dr. Turner maintains that her mentoring services as provided by Dr. Peter Tate "should be paid by LSS." [DE 88, Page ID# 2772]. Namely, Dr. Turner argues that Exhibit A explains how LSS was going to pay Dr. Tate for those services, the frequency of those payments, the limit of such fees, and how LSS is responsible to document these fees to Baptist. The Court does not disagree with Dr. Turner's detailed recitation of Exhibit A.

However, Exhibit A represents the list of expenses clearly included in the definition of Incremental Expenses under the Recruitment Agreement. In other words, per the plain language of the contract, all of these expenses, including "Mentoring Services", must be deducted from Dr. Turner's Collected Fees. Merely because LSS detailed how it was going to pay Dr. Tate and document those fees to Baptist does not shift the legal obligations for those fees away from Dr. Turner.

Dr. Turner also argues there are several aspects of the Incremental Expenses calculations for which Dr. Turner did not receive full documentation or has been unable to confirm. [DE 88, Page ID# 2771-72]. However, this case has remained pending for more than three years. Dr. Turner had every opportunity to explore the bases for Incremental Expenses during discovery. The Court cannot find a material dispute at this stage based upon conjecture and theories.

7

Thus, LSS's calculation of Incremental Expenses is deemed correct meaning Dr. Turner's indebtedness remains $230,985.74.

**B.   PRE- AND POST-JUDGMENT INTEREST**

The next issue to address is whether LSS receives pre- and post-judgment interest on the sum of $230,985.74. Per Kentucky law, pre-judgment interest is available on liquidated sums at eight percent per annum. KRS 360.010(1). Post-judgment interest is calculated at six percent per annum. KRS 360.040(1). LSS has provided calculations for both pre- and post-judgment interest based upon the indebtedness of $230,985.74. [DE Page ID# 2710, 2712]. Dr. Turner does not challenge these calculations specifically but complains about LSS litigation strategies overall. [DE 88, Page ID# 2779 ("Dr. Turner asserts that LSS should not be awarded any legal fees associated with this litigation because of LSS's conduct in deceiving Dr. Turner pre-employment about making her the only surgical oncologist at the practice, as well as its conduct of withholding information from her during her employment and during the litigation. This request includes withholding repayment of LSS's attorney's fees, and any interest related to this litigation (pre-judgment or post-judgment interest fees).")]. Thus, the Court will adopt those calculations for its final judgment.

**C.   ATTORNEYS' FEES**

The Employment Agreement provides that "[i]n the event that [LSS] pays any amount to [Baptist] as described above, [Dr. Turner] shall indemnify and hold harmless [LSS] for the full amount of all such payments and the amount of all costs and expenses of recovering such amounts from [Dr. Turner] (**including, but not**

**limited to, reasonable attorneys' fees**)[.]" [DE 58-6, Page ID# 840 (emphasis added)]. Counsel for LSS has provided detailed information establishing that LSS has spent $194,375.50. [DE 85, Page ID# 2710]. Again, while Dr. Turner argues that LSS should not receive attorneys' fees given the inequities in the relationship between LSS and Dr. Turner, the agreed upon contract between the parties says otherwise. Considering Dr. Turner does not specifically challenge any part of the proposed attorneys' fees for LSS, the Court will also include that amount in the judgment.

## III.     CONCLUSION

For the foregoing reasons, and in keeping with the Court's Summary Judgment Memorandum Opinion and Order entered March 5, 2024, DE 84, **IT IS ORDERED** that as to Count I of the Amended Complaint:

(1) LSS shall be awarded contractual damages in the amount of $230,985.74.

(2) LSS shall be awarded attorneys' fees in the amount of $194,375.50.

(3) LSS shall be awarded pre-judgment interest in the amount of eight percent (8%) per annum per KRS 360.010(1), and post-judgment interest of six percent (6%) per annum per KRS 360.040(1) on the liquidated sum of $230,985.74.

**IT IS FURTHER ORDERED** that LSS shall supplement its Notice at DE 94 by no later than June 14, 2024.

Entered this 7th day of June, 2024.

*Matthew A. Stinnett*
MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY